# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

MYINFOGUARD, LLC, NATIONWIDE   :
ASSIST, LLC, SOLO   :
COMMUNICATIONS, LLC, TOTAL   :
PROTECTION PLUS, LLC, UNITED   :
COMMUNICATIONS LINK, LLC,   :
VOICEXPRESS, INC, CONTACT   :
MESSAGE SYSTEMS, LLC, NATIONS   :
1ST, COMMUNICATIONS, LLC, NEW   :
LINK, NETWORK, LLC, NATIONS   :
VOICE PLUS, LLC, BLVD NETWORK,   :
LLC, COAST TO COAST VOICE, LLC,   :
EMERGENCY ROADSIDE VOICEMAIL,   :
LLC, METELINE TECH, INC,   :
ROADSIDE PAL, LLC, SELECTED,   :
SERVICES INC, SELECTED OPTIONS,   :
INC, TRIVOICE INTERNATIONAL,   :
LTD, USA VOICE MAIL, INC, and   :
VOXTRAIL, LTD,   :
   :
         Plaintiffs,   :
   :   Case no. 2:12-cv-074
      v.   :
   :
WILLIAM H. SORRELL, in his   :
official capacity as Attorney   :
General of the State of Vermont, :
PETER SHUMLIN in his official   :
capacity as Governor of the   :
State of Vermont, and ELLIOT M. :
BURG in his individual capacity, :
   :
         Defendants.   :
   :
\*   \*   \*   \*   \*   \*   \*  :  \*   \*   \*   \*   \*   \*   \*
   :
STATE OF VERMONT,   :
   :
         Plaintiff,   :
   : Case no. 2:12-cv-102
      v.   :
   :
MYINFOGUARD, LLC, NATIONWIDE   :
ASSIST, LLC, SOLO   :

COMMUNICATIONS, LLC, TOTAL          :
PROTECTION PLUS, LLC, UNITED        :
COMMUNICATIONS LINK, LLC,           :
VOICEXPRESS, INC, CONTACT           :
MESSAGE SYSTEMS, LLC, NATIONS       :
1ST, COMMUNICATIONS, LLC, NEW       :
LINK, NETWORK, LLC, and NATIONS     :
VOICE PLUS, LLC, BETTY STEWART,     :
ROBERT POITRAS, DENNIS              :
KALLIVOKAS, GEORGE LUTICH,          :
NICHOLAS DELCORSO, NEIL             :
WILLIAMS, LUIS A. RUELAS,           :
CHARLES R. DARST, SCOTT A.          :
LUCAS, BRYAN GLAUS, VINCENT         :
DELCORSO, JOSEPH MARINUCCI,         :
NICHOLAS KALLIVOKAS, DADATA,        :
INC., ENHANCED SERVICES BILLING,    :
INC., and ILD CORP,                 :
                                    :
            Defendants.             :

**OPINION AND ORDER**

These cases concern two provisions of Vermont's since-
amended Consumer Protection Act ("CPA"), Vt. Stat. Ann. tit 9 §
2451 *et seq* (West 2012).  Section 2453 contains a general
prohibition of all "[u]nfair methods of competition in commerce,
and unfair or deceptive acts or practices in commerce."
Meanwhile, section 2466 (amended as of May 27, 2011) required
that companies wishing to charge consumers on their local
telephone bills notify them of the charges by first-class mail.

For the last two years, the State of Vermont has been
investigating U.S. companies for practices that violate its
consumer protection laws and regulations, which include charging
consumers for telephone services without consumers'

authorization (a practice known as "cramming"), failing to comply with notification requirements, and other unfair practices. On April 17, 2012, while the parties were engaged in initial settlement discussions, ten of those companies[1] located in Florida and New York (collectively, "the Sellers") filed a suit (No. 12-cv-74 or "case 74") in this Court challenging the constitutionality of section 2466 (the notification provision) on Commerce Clause, equal protection, and First Amendment grounds. Two days later, on the nineteenth, the State of Vermont filed a civil enforcement action in Washington Superior Court against the Sellers, thirteen related individuals, and three other companies for alleged violations of sections 2453 and 2466. On May 14, 2012, the Sellers filed notice that they were removing the state enforcement action to this Court (No. 12-cv-102 or "case 102"). Two days later on the sixteenth, the Sellers filed a First Amended Complaint in case 74 in which they added ten additional corporations as plaintiffs[2] as well as a new

---

[1] The ten corporations are MyInfoGuard, LLC; Nationwide Assist, LLC; Solo Communications, LLC; Total Protection Plus, LLC; United Communications Link, LLC; VoiceXpress, Inc.; Contact Message Systems, LLC; Nations 1st Communications, LLC; New Link Network, LLC; and Nations Voice Plus, LLC.

[2] The parties in the First Amended Complaint are Blvd Network, LLC; Coast to Coast Voice, LLC; Emergency Roadside Voicemail, LLC; Meteline Tech, Inc.; Roadside Pal, LLC; Selected Services, Inc.; Selected Options, Inc.; TriVoice International, Ltd.; USA Voice Mail, Inc.; and Voxtrail, Ltd. None of these corporations are parties to the State's CPA enforcement action.

claim alleging that Assistant Attorney General ("AAG") Burg, the lead attorney for the State in both cases, had violated the Sellers' constitutional rights in violation of 42 U.S.C. § 1983.

In a separate state action, five of the new plaintiff corporations sought to quash civil administrative subpoenas issued by the Attorney General on the grounds that any continuing investigation should be conducted under the auspices of federal discovery in case 74. On October 19, Superior Court Judge Bent denied this request. *See* case 74 ECF No. 30.

Multiple motions are pending before the Court: (1) AAG Burg's Motion to Dismiss the Sellers' section 1983 claim in case 74, (case 74 ECF No. 16); (2) the State's Motion to Remand case 102 on the grounds that it was improperly removed, (case 102 ECF No. 44); (3) Motions to Dismiss the State's CPA claims in case 102, (case 102 ECF Nos. 58, 59, 80); (4) the Attorney General's Motion to Dismiss case 74 under the abstention doctrine recognized in *Younger v. Harris*, 401 U.S. 37 (1971), (case 74 ECF No. 7); and (5) the Sellers' Motion to Stay proceedings in Washington Superior Court relating to investigative subpoenas sought by the Attorney General (case 74 ECF No. 25 (cross-filed as case 102 ECF No. 101).

For the reasons stated below, the Court **grants** AAG Burg's Motion to Dismiss Count V of the case 74 Complaint; **dismisses**

the remainder of case 74 on *Younger* abstention grounds; and
**remands** case 102 to the Washington Superior Court for further
proceedings.  The Court also **denies as moot** the Motions to
Dismiss the CPA claims as well as the Motion to Stay additional
state proceedings.

## Discussion

### I.   The § 1983 Claim Against AAG Burg

Count V of the First Amended Complaint ("Complaint") in
case 74 asserts a § 1983 claim for monetary damages against AAG
Burg in his personal capacity.  The Sellers allege that AAG Burg
violated their constitutional rights by drafting the pre-2011
version of § 2466; enforcing that provision despite being aware
that its constitutionality was questionable after the Second
Circuit's decision in *IMS Health, Inc. v. Sorell*, 630 F.3d 263
(2d Cir. 2010); testifying before the Vermont Legislature in
favor of a replacement for section 2466; and otherwise
improperly using his powers to investigate violations of the
provision and to pursue civil cases against the Sellers and
other corporations.  *See* case 74 ECF No. 19 at *3-8.  AAG Burg
seeks to dismiss this claim because he is protected by absolute
immunity for his official actions as an AAG.  *See Imbler v.
Pachtman*, 424 U.S. 409, 419 n.13 (1976) ("An absolute immunity
defeats a suit at the outset, so long as the official's actions

were within the scope of the immunity."); *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (Where the nature of the function being performed by the defendant official is clear from the face of the complaint, "the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6).").

Absolute immunity extends to government officials performing functions "analogous to those of a prosecutor." *Butz v. Economou*, 438 U.S. 478, 515 (1978); *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010) ("This Court has previously extended absolute immunity to state and federal officials initiating noncriminal proceedings such as administrative proceedings and civil litigation."). The purpose of such immunity is to protect government attorneys from fear of intimidation or harassment when they are advocating for the state. *See Butz*, 436 U.S. at 512. In determining whether a particular official is entitled to absolute immunity, courts focus on the functions performed by that official. Trial conduct as well as actions taken in preparation or in anticipation of litigation are generally afforded absolute immunity; however, a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to

absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273
(1993). Absolute immunity is inapplicable in situations where a
government attorney acts beyond the scope of his or her
authority or in the "'clear absence of all jurisdiction.'" *Doe
v. Philips*, 81 F.3d 1204, 1210 (2d Cir. 1996) (quoting *Stump v.
Sparkman*, 435 U.S. 349, 357 (1978)).

There is little question that AAG Burg was acting as the
functional equivalent of a prosecutor while he was investigating
potential violations of the CPA to determine whether to file
civil enforcement actions. Issuing civil investigative
subpoenas, threatening enforcement actions, engaging in
settlement discussions, and filing a state court action are all
related to the Attorney General's preparation for litigation.
*Accord McCormick v. City of Lawrence, Kan.*, 253 F. Supp. 2d
1172, 1204-05 (D. Kan. 2003); *Brewer v. Hill*, 453 F. Supp. 67,
69 (N.D. Tex. 1978). It is also quite clear that when AAG Burg
took these actions, he was acting within the scope of his
authority under Vermont law. *See generally* Vt. Stat. Ann. tit.
3 §§ 152, 157 (authorizing the Attorney General to prepare and
try civil and criminal matters at common law, as allowed by
statute, and also those in which the state is a party); *id.*, §
153 (allowing the appointment of a Deputy Attorney General and
Assistant Attorney Generals); Vt. Stat. Ann. tit. 9 §§ 2458-60

7

(authorizing the Attorney General to investigate and enforce Vermont's consumer protection laws).  Nor is this a case in which the AAG acted without authority by, for example, enforcing a provision that was invalidated by a prior court judgment or abrogated by a superseding statute.  The AAG does not retroactively lose authority to enforce the notification requirement simply because the Sellers have raised potentially valid constitutional objections.

AAG Burg's legislative activities present a different question because drafting legislation and providing testimony are not analogous to the functions of a prosecutor, even if Vermont law requires the Attorney General and his subordinates to perform these tasks.  *See* Vt. Stat. Ann. tit. 3 § 158. Nonetheless, a different form of protection, absolute legislative immunity, attaches to all actions taken "in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).  This immunity shelters from suit non-legislative officials who perform legislative functions, such as drafting or otherwise shaping legislation. *See id.* at 55; *State Employees Bargaining Coal v. Rowland*, 494 F.3d 71, 82 (2d Cir.

2007).  For this reason, AAG Burg is also entitled to absolute immunity for his role in drafting section 2466.[3]

Because AAG Burg is entitled to absolute immunity for enforcing the CPA and testifying before legislature, the Court dismisses the Sellers' § 1983 claim against AAG Burg for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

## II.  The State's Motion to Remand Case 102

According to the State, removal of case 102 was improper, and this Court should remand that action to the Washington Superior Court.  *See* 28 U.S.C. § 1447(c).  An action filed in state court may be removed to federal court "only if the case originally could have been filed in federal court."  *Marcus v.*

_____

[3] Whether AAG Burg is entitled to absolute immunity for his 2011 testimony in favor of amending the notification provision is a closer question.  While absolute immunity from section 1983 claims attaches to a witness' testimony in judicial proceedings, *see, e.g.*, *Rehberg v. Paulk*, 132 S. Ct. 1497, 1503 (2012) (extending absolute immunity to grand jury testimony), it has never been extended to the legislative context.  *See, e.g.*, *United States v. Philip Morris USA, Inc.*, 337 F. Supp. 2d 15, 27 (D.D.C. 2004) ("While the common law provides absolute immunity for witnesses in *judicial* proceedings in order to encourage candor without fear of prosecution, the immunity in *legislative* proceedings extends only to actions for defamation or libel.") (emphasis in original) (unaffected by subsequent amendment, No. CIVA 99-2496 GK, 2004 WL 5370172 (D.D.C. Aug. 10, 2004)).  The Court need not resolve this issue, though, because the Sellers do not allege that AAG Burg's testimony about the withholding provision constituted a violation of their constitutional rights; rather, they merely cite his testimony as evidence of the withholding provision's questionable validity.

*AT&T Corp*, 138 F.3d 46, 51 (2d Cir. 1998) (citing 28 U.S.C.
§ 1441(a)).

The Sellers claim that there are three bases on which this
Court may assert original jurisdiction over case 102: ordinary
diversity jurisdiction under 28 U.S.C. § 1332(a); the "mass
action" provision of the Class Action Fairness Act ("CAFA"), 28
U.S.C. § 1332(d)(1); and the "class action" provision of CAFA,
28 U.S.C. § 1332(d)(2)-(10).  The State contends that the
Sellers fail to show that there is original jurisdiction on any
of these grounds.  First, the State argues, correctly, that it
is not a citizen for the purpose of diversity jurisdiction.
*Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ("There is
no question that a State is not a 'citizen' for the purposes of
the diversity jurisdiction.").  Second, the State notes that
both the class action and mass action prongs of CAFA require at
least 100 members or parties.  *See* 28 U.S.C. § 1331(d)(5)(B),
(d)(11)(B)(i).  Because the State is the sole plaintiff in the
enforcement action, the State argues that the Sellers cannot
establish that the numerosity requirements of CAFA are met.  The
Sellers respond by noting that this Court must look beyond the
face of the complaint and determine whether there is
jurisdiction based on the citizenship of the "real and
substantial parties to the controversy," who in their view are

the affected consumers and their telephone providers. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980). The fundamental dispute, then, is whether the State or the group of consumers subjected to cramming is the real party in interest in this case. If those consumers, who number over one thousand, are the real parties in interest, then the Sellers will have little difficulty satisfying the numerosity requirements of CAFA and may also be able to show complete diversity for the purposes of section 1332(a).

With respect to both section 1332(a) and CAFA, federal courts are in general agreement that "a crucial distinction must be made between a plaintiff who sues *solely* in his capacity as an agent, on the one hand, and, on the other, a plaintiff who sues not only as an agent, but also as an individual who has his own stake in the litigation." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003) (emphasis added). However, there is a circuit split regarding the approach courts should apply when determining whether a State is a real party in interest in a *parens patriae* action. The Fifth Circuit has adopted a "claim-by-claim" analysis, which despite its name actually requires a court to consider whether a party will benefit from each form of relief requested. *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir.

11

2008). The Fourth, Seventh, and Ninth Circuits, on the other hand, apply a wholesale approach, which requires consideration of the complaint in its entirety. *See AU Optronics Corp. v. South Carolina*, No. 11-254, 11-255, 2012 WL 5265799 at *6 (4th Cir. Oct. 25, 2012); *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 773 (7th Cir. 2011); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 671 (9th Cir. 2012).[4] This disagreement stems in part from the relatively recent adoption of CAFA, which Congress enacted to expand the scope of class actions that would be litigated in federal court and thereby prevent class-action plaintiffs from forum-shopping. *See generally* Dwight R. Carswell, Comment, *CAFA and* Parens Patriae *Actions*, 78 U. Chi. L. Rev. 345, 349-53 (2011).

This Court adopts the wholesale approach. Although the enactment of CAFA was meant to expand federal court jurisdiction over class actions, it does not follow that "federal courts are required to deviate from the traditional 'whole complaint' analysis when evaluating whether a State is the real party in interest in a *parens patriae* case." *LG Display Co., Ltd.*, 665 F.3d at 776-77 (quoting *In re TFT-LCD (Flat Panel) Antitrust*

---

[4] The Second Circuit has yet to decide this question, but a district court in Connecticut has joined the Fourth, Seventh, and Ninth Circuits in applying the wholesale approach. *See; Connecticut v. Moody's Corp.,* No. 10-CV-546, 2011 WL 63905 at *3-4 (D. Conn. Jan. 5, 2011).

*Litig*, No. C 07-1927, 2011 WL 560593 (N.D. Cal. Feb. 15, 2011));
*see also Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464, (1945) ("[T]he nature of a suit as one against the state is to be determined by the essential nature and effect of the proceeding.") overruled on other grounds by *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613 (2002). Indeed, the Supreme Court has counseled that restraint is particularly suitable in the removal context in light of its longstanding policy of strictly construing the statutory procedures for removal (*see Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002)), as well as the sovereignty concerns raised by asserting federal jurisdiction over cases brought by states in their own courts. *See Franchise Tax. Bd. V. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.").

The State seeks three remedies under the public enforcement provision of the CPA, Vt. Stat. Ann. tit. 9 § 1458: (1) a permanent injunction prohibiting Defendants from engaging in unfair business practices; (2) civil penalties of up to $10,000 for each violation of the act; and (3) full restitution to all Vermont customers who paid money to Defendants through charges

13

on their local telephone bills.  *See* case 102 ECF No. 9

(Consumer Fraud Complaint) at *31.  Under the CPA, only the

State may seek civil penalties or injunctive relief restraining

a particular practice or corporation on a statewide basis.  By

contrast, the private action provision of the CPA merely

authorizes monetary damages, attorney's fees, exemplary damages

up to three times the value of the consideration given to the

consumer, as well as "appropriate equitable relief."[5]  Vt. Stat.

Ann. tit. 9 § 2461(b); *see also Gramatan Home Investors Corp. v.

Starling*, 470 A.2d 1157, 1161 (Vt. 1983) (explaining that

consumers cannot seek a civil penalty under section 2461(b)).

Applying the wholesale approach, the Court finds that the

state is a real party in interest in its enforcement action.

The fact that the State seeks civil penalties and a statewide

injunction against cramming—remedies unavailable to consumers—

leaves no doubt that the State has concrete interests in the

litigation; put simply, the benefits of those remedies flow to

the State as a whole.  *Accord Connecticut v. Moody's Corp.,* No.

10-CV-546, 2011 WL 63905 at *3-4 (D. Conn. Jan. 5, 2011);

---

[5] Consumers entitled to "appropriate equitable relief" might be able to
secure an injunction against an offending corporation; however, there
does not appear to be a single instance in which an injunction has
been granted under the private action component of the CPA.  The
Vermont Supreme Court has made clear in other contexts that the
issuance of an injunction is an extraordinary remedy that is
unwarranted where monetary damages will suffice.  *See, e.g., Okemo
Mountain, Inc. v. Town of Ludlow*, 762 A.2d 1219, 1227 (2000).

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia*, 311 F.
Supp. 149, 155 (S.D.N.Y. 1970) (quoting *Missouri, K. & T. Ry.
Co. of Kansas v. Hickman*, 183 U.S. 53, 59 (1901) ("It may be
fairly held that the State is such [a] real party [in interest]
when the relief sought is that which enures to it alone, and in
its favor the judgment or decree, if for the plaintiff, will
effectively operate.")).  The fact that the State also seeks
restitution for Vermont consumers specifically affected by
cramming practices does not undermine the State's broader
interest in its case.  *Accord Hood v. AstraZeneca Pharmas., LP*,
744 F. Supp. 2d 590, 596 (N.D. Miss. 2010) ("The fact that
another party may benefit from a favorable resolution of this
case does not minimize or negate the State's substantial
interest.").

    The Sellers argue that the civil penalty and injunction
portions of the case 102 Complaint are irrelevant to the
determination of whether the State is the real party at interest
because under their reading of the CPA, the injunction and civil
penalty provisions are facially inapplicable in this case.[6]  *See
Louisiana ex. rel Caldwell*, 536 F.3d at 424-25 ("'Defendants may
pierce the pleadings to show that the . . . claim has been

_____

[6] In making this argument, the Sellers incorporate the portions of
ESBI's Motion to Dismiss (case 102 ECF No. 58) that address this
issue.  *See* Case 102 ECF No. 72 at *7 n.4.

fraudulently pleaded to prevent removal.'") (quoting *Burchett v. Cargill, Inc.*, 38 F.3d 170, 175 (5th Cir. 1995)). The Sellers note that they voluntarily ceased cramming prior to this litigation and that in any event, the recent amendment of the notification provision prohibits most third-party charges to Vermont telephone customers anyway. They then suggest that Vt. Stat. Ann. tit. 9 § 2458 only authorizes the State to seek injunctive relief for prospective violations of the CPA and that the State may not seek civil penalties unless a potential defendant has violated the terms of an *existing* injunction.[7]

In the woods of statutory interpretation, this Court may occasionally be convinced to take a road less traveled, but by advancing a rather tortured construction of the CPA, the Sellers are essentially asking the Court to bushwhack. First, the Sellers rely heavily on a hyper-textual reading of the first clause in section 2458(a), which permits state attorneys to file an action in the name of a state when they have reason to believe that a person "*is using* or *is about to use*" an unlawful practice. *Id.* (emphasis added). But it strains credulity to

---

[7] Contrary to the Sellers' representations, the Vermont Supreme Court did not demarcate the scope of the Attorney General's authority to take action against past conduct in *State of Vermont v. International Collection Service, Inc.*, 594 A.2d 426 (Vt. 1991); the Court merely determined that the Attorney General could take action in cases where businesses rather than consumers were victimized by unfair or deceptive acts. *Id.* at 432.

think that the Vermont legislature intended these words to allow persons or companies to avoid a lawsuit by simply ceasing unlawful activity. *See State of Vermont v. Custom Pools*, 556 A.2d 72, 74 (Vt. 1988) (explaining that the Court must give "meaning and effect" to the purpose of section 2458—protecting the public from unfair or deceptive acts or practices). Such a rule would provide potential defendants with a comically easy way to avoid suits by the State, and it would also be inconsistent with section 2458(b), which authorizes remedies— including civil penalties and restitution—that are meant to address past, not future harms. Indeed, injunctive relief is often warranted precisely because the circumstances of a particular case strongly suggest that past violations of law are likely to continue, even where a party has voluntarily suspended the activity in question. *See, e.g.*, *Sec. & Exch. Comm'n v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1100 (2d Cir. 1972) ("The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated.").

In addition, section 2459 allows the Attorney General to accept an "assurance of discontinuance" of unfair or deceptive practices in any case where the Attorney General had the

17

authority to institute an action under section 2458, while section 2460 permits the Attorney General to issue civil investigative subpoenas for past violations of the CPA. Both of these provisions would be rendered superfluous if, as the Sellers claim, the Attorney General had no ability to file an action without reasonable belief of an ongoing or prospective violation.

The Sellers also ask this Court to read section 2461, which permits a civil penalty of $10,000 for each violation of an injunction order, as imposing a limitation on section 2458(b), which provides that state attorneys may request other forms of relief in addition to injunctive relief, including "the imposition of a civil penalty of not more than $10,000.00 for each violation." A plain reading of these provisions suggests that they govern separate circumstances: section 2458(b) allows civil penalties and injunctive relief (along with other remedies, such as restitution and reimbursement) when the Court determines there has been a violation of the CPA, while section 2461 allows additional civil penalties when a person has violated an *existing* temporary or permanent injunction previously issued by a court.

At this point, though, the Court need not resolve these statutory questions. The Court simply concludes that the State

is relying on a reasonable interpretation of section 2458, that the State's requests for injunctive relief and civil penalties are not facially inapplicable in this case, and that those forms of relief are therefore relevant to the determination that the State is a real party in interest. The Sellers are of course entitled to raise their arguments again on remand; however, this Court suspects that the Sellers will find themselves entangled in the prickly-ash if they do not blaze an interpretive trail that is more enticing to follow.

Accordingly, the Court finds that it does not have original jurisdiction over case 102 under either the general diversity provision at 28 U.S.C. § 1332(a) or CAFA. Removal was therefore improper, and the Court remands case 102 to the Washington Superior Court. *See* 28 U.S.C. §§ 1441, 1447(c).

### III. The Sellers' Motions to Dismiss the CPA Claims

The Sellers and the other defendants in case 102 raise a series of motions to dismiss the State's CPA claims against them. In summary, they claim that the section 2466 notification requirement violates the Commerce Clause, that the Attorney General lacks authority to bring an action against them under section 2458, that the Attorney General has failed to state a claim upon which relief may be granted, that portions of the State's claims are barred by the statute of limitations, and

that the State does not have personal jurisdiction over

Defendants Luis Reulas and Joseph Marinucci. *See* case 102 ECF

Nos. 58, 81. Because the Court is remanding case 102, the Court

denies these motions as moot. *See, e.g.*, *Ben & Jerry's*

*Homemade, Inc. v. KLLM, Inc.*, 58 F. Supp. 2d 315, 319 (D. Vt.

1999) (remanding due to improper removal and denying a Rule

12(b)(6) motion to dismiss as moot). The state court will have

the opportunity to hear and decide the Sellers' constitutional

claims.

## IV.   The State's Motion to Dismiss Case 74 on *Younger* Abstention Grounds

The State asks the Court to dismiss case 74 pursuant to the

doctrine established by *Younger v. Harris*, 401 U.S. 37 (1971),

which precludes federal courts from enjoining ongoing state

proceedings.[8] Although *Younger* itself was limited to state

criminal trials, the doctrine has since been expanded to

encompass state civil and administrative enforcement actions.

*See, e.g.*, *Juidice v. Vail*, 430 U.S. 327 (1977) (civil

contempt); *Trainor v. Hernandez*, 431 U.S. 434 (1977) (civil

fraud); *Moore v. Simms*, 442 U.S. 415 (1979) (state child abuse

proceeding); *Ohio Civil Rights Comm'm v. Dayton Christian*

*Schools, Inc.*, 477 U.S. 619 (1986) (state administrative

---

[8] *Younger* abstention applies with equal force to declaratory judgment
actions. *Samuels v. Mackell*, 401 U.S. 66, 69-70, 72-73 (1971).

proceeding).  *Younger* abstention is premised on "the basic
doctrine of equity jurisprudence that courts of equity should
not act . . . when the moving party has an adequate remedy at
law and will not suffer irreparable injury if denied equitable
relief."  *Younger*, 401 U.S. 43-44.  It is also rooted in "basic
concerns of federalism which counsel against interference by
federal courts, through injunctions or otherwise, with
legitimate state functions, particularly with the operation of
state courts."  *Trainor*, 431 U.S. at 441.

*Younger* abstention does not apply to claims for monetary
damages brought under 28 U.S.C. § 1983.  *See Rivers v. McLeod*,
252 F.3d 99, 101-02 (2d Cir. 2001) ("[A]pplication of the
Younger doctrine is inappropriate where the litigant seeks money
damages for an alleged violation of § 1983 . . . .");  *Deakins v.
Monaghan*, 484 U.S. 193, 202 (1998) (explaining that a district
court may stay but not dismiss monetary claims that are not
cognizable in a parallel state proceeding);  *cf. Mitchum v.
Foster*, 407 U.S. 225, 243 (1972) (holding that section 1983
claims are not barred by the anti-injunction statute).  The
Sellers cannot rely on this because the Court is dismissing
their section 1983 claim against AAG Burg, which includes their
sole request for monetary relief.

The Sellers claim that the remainder of case 74 should not be dismissed because the three requirements for *Younger* abstention are not met. "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).

The first two requirements are easily established. Because the Court is remanding case 102 to state court, there is an ongoing state proceeding: the state's CPA enforcement action against the Sellers. That the State enforcement action (case 102) was filed two days after the federal action (case 74) is of no consequence because *Younger* abstention only requires that the state action be initiated "before any proceedings of substance on the merits have taken place in federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

The Sellers' claims also clearly implicate important state interests. As the Second Circuit instructed in *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 102, 105-06 (2d Cir. 1997), this Court must "look to the importance of the generic proceedings to the State" rather than the outcome of this particular case. *Id.*

(quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989)). Unlike *Phillip Morris*, the gravamen of the State's interest is not merely a "subrogation action grounded in tort"; in addition to seeking restitution for affected Vermont consumers, the State is acting under its own authority to prevent and eradicate unfair and deceptive business practices, interests the Second Circuit has already acknowledged are at the very least "arguably important." *Philip Morris*, 123 F.3d at 105-06. And as this Court has already explained, the State is seeking civil penalties and injunctive relief, remedies only the State is entitled to seek under the CPA.

The Sellers raise an inventive but no more successful argument with respect to the third and final requirement for *Younger* abstention. They suggest that there is no adequate opportunity for review of their constitutional claims in state court because the state enforcement action must be brought as a compulsory counterclaim to the federal suit, case 74. The Sellers rely principally on the mandatory nature of Rule 13(a), which, with certain exceptions, requires a litigant to "state as a counterclaim any claim that . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction."

Fed. R. Civ. P. 13(a).  The Sellers argue that because the
State's enforcement claims arise out of the same set of
transactions and occurrences as their constitutional claims, the
State's enforcement action "are compulsory counterclaims that
must be brought in the 074 case *or not at all*."  ECF No. 14 at
*13 (emphasis added).

The Sellers misperceive how Rule 13(a) operates,
particularly when, as here, the potential counterclaims are
filed in an independent action in state court *while the federal
action was pending*.  Put simply, a federal court has no
authority to enjoin a state action even if it concerns claims
that should have been filed as compulsory counterclaims.  The
reason for this is straightforward.  The Anti-Injunction Act
states that "[a] court of the United States may not grant an
injunction to stay proceedings in a State court except as
expressly authorized by Act of Congress, or where necessary in
aid of its jurisdiction, or to protect or effectuate its
judgments." 28 U.S.C § 2283; *see also Mitchum*, 407 U.S. at 228-
29 (expressly rejecting "the view that the anti-injunction
statute merely states a flexible doctrine of comity, and
[making] clear that the statute imposes an absolute ban upon the
issuance of a federal injunction against a pending state court

proceeding, in the absence of one of the recognized exceptions.").

When, as here, the state action does not threaten this Court's jurisdiction or a judgment, two of the three exceptions are wholly inapplicable. The only remaining way for the Sellers to skirt the Anti-Injunction Act is to argue that Rule 13(a) represents an express exception to the Anti-Injunction Act; however, federal courts have consistently held that it is not. *See, e.g.*, *Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 855 n.5 (9th Cir. 1981) ("[A] federal court is barred by § 2283 from enjoining a party from proceeding in state court on a claim that should have been pleaded as a compulsory counterclaim in a prior federal suit."); *Connecticut Housing Fin. Auth. v. Eno Farms Ltd. P'ship,* No. 07-cv-319, 2007 WL 1670130, at *3 n.2 (D. Conn. June 6, 2007); *Bridgeport Machines, Inc. v. Alamo Iron Works, Inc.*, 76 F. Supp. 2d 209, 212 (D. Conn. 1999); *Bruce v. Martin,* 680 F. Supp. 616, 620 n.3 (S.D.N.Y. 1988).[9] This Court agrees. When there is a conflict,

---

[9] District courts in other circuits agree. *See, e.g., A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 11-cv-163, 2011 WL 2692966 (N.D. Ind. July 8, 2011); *Vick v. Nash Hosp., Inc.,* 756 F. Supp. 2d 690, 693–94 (E.D.N.C. 2010); *Wells Dairy, Inc. v. The Estate of J.P. Richardson*, 89 F. Supp. 2d 1042, 1065 (N.D. Iowa 2000); *Gunderson v. ADM Investor Servs., Inc.*, 976 F. Supp. 818, 825 (N.D. Iowa 1997); *Cont'l White Cap v. Speco, Inc.,* 1987 WL 14617, at *2 (N.D. Il. July 17, 1987); *L. F. Dommerich & Co. v. Bress*, 280 F. Supp. 590, 600 (D.N.J. 1968).

the principle of avoiding interfering with state proceedings trumps the preference, reflected in Rule 13(a), for avoiding potentially duplicative litigation. *See* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1418 (3d ed. 2012) (explaining that in the absence of voluntary abstention by one court, both a state and federal action may proceed toward judgment and that any issues resolved in the first case to be decided will control in the second).

Indeed, there is an even more basic reason to reject the Sellers' Rule 13(a) argument: it is little more than an end run around the Supreme Court's decision in *Hicks v. Miranda*, which held "that where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." 422 U.S. at 349. *Hicks*, like *Younger*, applies with equal force to civil proceedings. *See Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984). *Younger* abstention does not turn on who wins the race to court, which is precisely the position the Sellers are taking in this litigation. This Court has no authority to enjoin an ongoing State proceeding simply because it concerns claims that arguably should have been filed as compulsory counterclaims under Rule

13(a).[10]  For that reason, Rule 13(a) presents no bar to the
adequate review of the Sellers' constitutional claims, and the
third and final requirement for *Younger* abstention is met.

Finally, the Sellers argue that *Younger* abstention is
inappropriate because the State has acted in bad faith.  *See
Younger*, 401 U.S. at 54.  The bad-faith exception is rarely
applied and is only appropriate where the state has "no
reasonable expectation of obtaining a favorable outcome," *Cullen
v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994), or where the state
proceeding is "motivated by a desire to harass or is conducted
in bad faith."  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611
(1975).  The Sellers fall well short of meeting this burden.
The Sellers' allegations on this point either repeat their
statutory arguments—which this Court finds unpersuasive—or cite
what this Court considers to be routine actions taken by the
State to enforce the CPA.  As the Court explains above, the
State relies on a plain reading of the relevant statutory
provisions and therefore does not clearly lack a reasonable
expectation of obtaining a favorable outcome against the
Sellers.  To the extent that the Sellers object to the way in
which those provisions are being administered, this Court

---

[10] For this reason, it is in this case immaterial whether or not the
state enforcement claims arise out of the same set of transactions and
occurrences as the federal constitutional claims.

declines the invitation to equate vigorous enforcement of presumptively valid consumer protection laws with harassment.

Because this Court must abstain under *Younger*, case 74 is dismissed. *See Obeda v. Connecticut Bd. of Registration for Prof'l Engineers & Land Surveyors*, 570 F. Supp. 1007, 1011 (D. Conn. 1983) ("[T]he proper action by the district court when *Younger* abstention applies is dismissal, not a stay.") (citing *Trainor*, 431 U.S. at 440–41). The Sellers may raise their constitutional claims as defenses or counterclaims in case 102 on remand. *See Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S. Ct. 1689, 1697, 36 L. Ed. 2d 488 (1973) ("*Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts.").

**V. The Sellers' Motion to Stay Additional State Proceedings**

A district court may stay state court proceedings to protect its own jurisdiction under the All Writs Act, 28 U.S.C. § 1651; however, because this Court is dismissing case 74 and remanding case 102, it will be left with no jurisdiction to protect. For this reason, the Court denies the Sellers' Motion to Stay additional state proceedings as moot.

**CONCLUSION**

For the reasons stated, the Court **dismisses** case 74, **remands** case 102, and **denies** as moot the Motions to Dismiss case 102 and the Sellers' Motion to Stay additional state proceedings.

Dated at Burlington, in the District of Vermont, this 9th day of November, 2012.

/s/William K. Sessions III__
William K. Sessions III
U.S. District Court Judge